Dated: February 23, 2021

ORDERED.

Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

PREMIER EXHIBITIONS, INC. a/k/a
PRYXIE LIQUIDATION CORP., *et al.*,

    Debtors.
_____/

MARK C. HEALY as Liquidating Trustee,

    Plaintiff,
v.

DAOPING BAO, *et al.*,

    Defendants.
_____/

Chapter 11
Case No.   3:16-bk-2232-JAF
Case No.   3:16-bk-2233-JAF
Case No.   3:16-bk-2234-JAF
Case No.   3:16-bk-2235-JAF
Case No.   3:16-bk-2236-JAF
Case No.   3:16-bk-2237-JAF
Case No.   3:16-bk-2238-JAF
(Jointly Administered)

Adv. Pro.   3:20-ap-0051-JAF
Adv. Pro.   3:18-ap-0064-JAF
(Consolidated for all purposes)

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

These consolidated adversary proceedings are before the Court on two motions to dismiss (the "Motions"). The first motion was filed by Defendant DAOPING BAO. (Doc. 34). The

second motion was jointly filed by Defendants MICHAEL EVANS, SID DUTCHAK, JEROME HENSHALL, MARK BAINS, and GUO DING. (Doc. 36). Plaintiff MARK C. HEALY, in his capacity as Chapter 11 liquidating trustee, filed a response to each motion. (Docs. 61 & 62). Defendants filed replies. (Docs. 77 & 78). As stated below, the Court denies the Motions.

The Court notes that a motion to withdraw the reference is pending before the United States District Court for the Middle District of Florida, Jacksonville Division (the "District Court"). In the interest of judicial economy, this Court will decide the Motions. Should the District Court undertake jurisdiction of this adversary proceeding in its entirety, it goes without saying that the District Court may revisit the Motions as it sees fit.

*Allegations of the Complaint*

On June 14, 2016 (the "Petition Date"), Premier Exhibitions, Inc. n/k/a Pryxie Liquidation Corp. ("Premier Exhibitions"), along with its subsidiaries and affiliates, (collectively "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The proofs of claim in these jointly administered cases total roughly $35 million.

In October 2019, the Court confirmed Debtors' Chapter 11 liquidation plan and appointed Plaintiff as the Chapter 11 liquidation trustee. Defendants are former officers, directors, managers, employees, and/or control persons of the Debtors in these jointly administered bankruptcy cases. In this adversary proceeding, Plaintiff primarily seeks damages for breach of fiduciary duty and other relief resulting from bad faith acts/omissions that harmed Debtors, their creditors, and their shareholders. (Doc. 1 at 2).

Premier Exhibitions was a former NASDAQ-listed publicly traded holding company that owned and operated a family of subsidiaries and affiliates, which collectively held "unique" exhibitions that toured world-wide. The exhibitions included artifacts recovered from the

"infamous" RMS Titanic shipwreck. Income was generated through ticket sales, third-party licensing, sponsorships, and merchandise sales. Debtors' unaudited gross revenue was roughly $25 to $30 million per year. During the time leading up to the filing of the bankruptcy petitions, Debtors faced mounting legal challenges and lawsuits that Plaintiff alleges were a direct result of the acts and omissions of Defendants and their management of the Debtors.

Defendant Bao is an individual and was a member of the board of directors, the chairman of the board, president, and chief executive officer of Premier Exhibitions at all material times. Defendant Bao became a director of Premier Exhibitions as a result of a merger between Premier Exhibitions and another company named DinoKing Tech Inc. ("DinoKing") in November 2015, roughly seven months before the Petition Date. Defendant Bao managed DinoKing prior to the merger. All Defendants named in this action were involved in the merger and became directors of Premier Exhibitions as a result of the merger.

Plaintiff alleges Defendant Bao breached his fiduciary duties of loyalty, care, and good faith to Premier Exhibitions (and its creditors and shareholders) by: (i) acting in the interests of insiders and/or others rather than in the best interests of Debtors; (ii) acting to decrease Debtors' enterprise value and liquidation value for the benefit of insiders and/or others rather than in the best interests of the Debtors; (iii) failing to ensure adequate capitalization and valuation of Debtors; and (iv) secretly engaging in conduct that reduced the sale price of Premier Exhibitions' assets in the instant bankruptcy cases. (Doc. 1 at 8-9). The remaining six defendants—Defendants Evans, Dutchak, Tao, Henshall, Bains, and Ding—were members of the board of directors at all material times. Plaintiff alleges these six defendants likewise breached their fiduciary duties of loyalty, care, and good faith by failing to monitor and oversee Defendant Bao and failing to prevent him from acting against the best interests of Debtors.

The alleged wrongful conduct centers on the sale of various business assets (the "Business Assets") of Debtors, including various artifacts recovered from the RMS Titanic. The Business Assets were valued at more than $218 million in 2014. Plaintiff claims Defendants intentionally mismanaged the business and/or allowed the business to be mismanaged, so that the Business Assets could be sold to an "insider" at a substantially reduced price, outside the reach of Debtors' creditors. (Doc. 1 at 11). Plaintiff contends that the "sale of just a small portion of" the Business Assets (worth $218 million) could have prevented the creditors (with claims of $35 million) from being harmed.

More specifically, Plaintiff alleges Defendants allowed the Debtors' financial position to slip into critical condition where disadvantageous transactions became necessary, all while Defendant Bao focused on creating opportunities for his affiliates in China to acquire the Debtors' assets at a steep discount. Plaintiff alleges Defendant Bao "secretly advised and provided inside information to [PacBridge Capital Partners (HK) Limited], which caused PacBridge to reduce the amount it was willing to pay for the Business Assets" from $50 million to $30 million. (Doc. 1 at 13). The original bid would have satisfied all creditor claims in full, and the revised bid would have paid most of the creditors' claims.

The committee of shareholders (the "Equity Committee") objected to PacBridge's purchase of the Business Assets, which caused PacBridge to cease its efforts. Yet, PacBridge later "linked up with a group of Chinese investors, formed Premier Acquisition Holdings LLC ('Premier Holdings'), and offered to purchase the Business Assets for a mere" $19.5 million. (Doc. 1 at 20). Premier Holdings is not a party to this proceeding or the bankruptcy cases. The Chinese investors behind Premier Holdings are "insiders" as to Defendant Bao, consisting of former business partners, friends, and relatives of Defendant Bao. Ultimately, Defendants caused the Business

Assets to be sold to Premier Holdings for $19.5 million, which "resulted in substantial damage" to the Debtors, the creditors, and shareholders of Premier Exhibitions.

Count 1 is a claim against Defendant Bao for breach of fiduciary duty. Count 2 alleges breach of fiduciary duty against the remaining Defendants. Count 3 is an objection to Defendants' claims against the bankruptcy estate, pursuant to Bankruptcy Rule 3007. Count 4 seeks subordination of Defendants' claims, pursuant to 11 U.S.C. § 510(c), to the extent that any such claims against the estates are not disallowed under Count 3.

### *The Sale Order*

Defendants argue this action is an attempt to rehash disputes that were resolved by the prior Order Authorizing Sale of Assets, entered in bankruptcy case no. 3:16-bk-2230-PMG (the "Sale Order") by Judge Glenn, in October 2018. (Doc. 34-3 at 1). The Court takes judicial notice of the Sale Order, which is a final judgment for which the appeal period has expired.[1]

The Sale Order approved the sale of the Business Assets to Premier Holdings. The Sale Order described the bidding procedures that had been put into place and found the Debtors demonstrated "sufficient [ ] sound business purposes and justifications for approval of the [sale]." (Doc. 34-3 at 6). The Sale Order found that the agreement to sell the Business Assets "was not entered for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code," and "[t]he consideration provided by the Purchaser under the Asset Purchase Agreement is fair and reasonable and constitutes [ ] reasonably equivalent value under the Bankruptcy Code . . . ." (Doc. 34-3 at 19). The Equity Committee objected to the sale of the Business Assets, but its specific argument is not clear from the record presented at this point.

---

[1] Defendant Bao attached hearing transcripts, but the Court will not consider these transcripts at the pleadings stage. (Doc. 34-2) (hearing on motion for approval of competitive bidding and sale procedures); (Doc. 34-5) (hearing on motion for sale of assets). Defendant Bao also attached the Equity Committee's objection to the bidding procedures (Doc. 34-4), but it appears he did not attach the Committee's objection to the sale of assets.

*Analysis*

Under Rule 12(b)(6), made applicable here by Bankruptcy Rule 7012, a defendant may challenge the sufficiency of the allegations in the complaint. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P 7012. In ruling on such a motion, the Court must accept all allegations as true and construe them in a light most favorable to the plaintiff. McCone v. Pitney Bowes, Inc., 582 F. App'x 798, 799-800 (11th Cir. 2014). The complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[A] court may consider the factual allegations in the complaint, documents attached to the complaint as an exhibit or incorporated therein by reference, [or] matters of which judicial notice may be taken . . . ." In re XO Commc'ns., Inc., 330 B.R. 394, 418 (Bankr. S.D.N.Y. 2005).

Defendants argue a number of points, chief of which is that this action is precluded in light of the Sale Order entered in 2018. Initially, the Court must dispense with Defendants' issue-preclusion[2] argument because it is clear the specific "issues" raised in this action were not "actually litigated" at the time of the Sale Order. See generally Schlenkerman v. Goldbronn (In re Goldbronn), 263 B.R. 347, 363 (Bankr. M.D. Fla. 2001) ("In general, an issue is actually litigated when it is properly raised by the pleadings or otherwise, is submitted for determination and is determined."). The "issues" in these proceedings are allegations concerning breaches of fiduciary duties, in violation of Florida law. The Sale Order did not address Defendants' fiduciary duties.

---

[2] Taylor v. Sturgell, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.' Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim.").

Moreover, these allegations are more appropriately characterized as "claims" subject to analysis under claim preclusion.

"Res judicata or claim preclusion 'bars relitigation of matters that were litigated or could have been litigated in an earlier suit.'" Giddens v. Lawson, 2020 WL 7386365, at *2 (11th Cir. Dec. 16, 2020). "A claim that was or could have been brought in a prior lawsuit is barred by the judgment in the earlier case when (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the judgment was final and on the merits; (3) both cases involve the same parties or those in privity with them; and (4) both cases involve the same causes of action." Id.

Here, the key difference between these adversary proceedings and the contested matter/asset sale is that Plaintiff contends the fiduciary breaches caused a reduction in the reasonable value of the assets, whereas the Sale Order determined the sale value was reasonable under the circumstances at that time. Put differently, Plaintiff contends Defendants breached their fiduciary duties by allowing the prevailing circumstances to deteriorate to the point that $19.5 million became a reasonable valuation for the Business Assets. Nothing in the Sale Order speaks to whether the individuals named in this action breached any fiduciary duties in the lead up to the filing of the bankruptcy petitions or in the lead up to the sale of assets. Whether Plaintiff's allegations are ultimately proven meritorious remains to be seen. At the pleadings stage, it is not abundantly clear whether the present claims could have been or should have been raised at trial on the sale of the Business Assets.

Therefore, in light of the allegations and the pending motion to withdraw filed by Defendants, the Court is not in a position to dispose of this adversary proceeding and will allow the parties to engage in discovery. Defendants may raise these same arguments at summary judgment if the discovery ultimately supports such arguments. Upon the foregoing, it is

**ORDERED:**

Defendants' Motions (Docs. 34 & 36) are denied without prejudice to raising these arguments at summary judgment.